**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**CLEAN EARTH OF MARYLAND, INC.,**

        Plaintiff,

v.                                                                       **Civil Action No. 2:10-CV-119
(BAILEY)**

**TOTAL SAFETY, INC., et al.,**

        Defendants.

**ORDER DENYING DEFENDANT EMERGENCY RESPONSE & TRAINING
SOLUTIONS' MOTION FOR APPLICATION OF MARYLAND SUBSTANTIVE LAW**

Currently pending before this Court is Defendant Emergency Response & Training Solutions' ("ERTS") Motion for Application of Maryland Substantive Law [Doc. 38], filed March 7, 2011. Defendant Westchester Surplus Lines Insurance Company ("Westchester") and the plaintiff responded on March 17, 2011, and March 21, 2011, respectively [Docs. 40 & 41], and ERTS replied on March 30, 2011 [Doc. 43]. Westchester also replied to the plaintiff's brief on March 28, 2011 [Doc. 42]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion should be **DENIED** as premature.

**BACKGROUND**

**I.**     **Factual Allegations**

According to the First Amended Complaint ("FAC"), this case arises from the spill of battery acid and diesel fuel near Judy Gap, Pendleton County, West Virginia, and the subsequent transportation of the contaminated soil to a Maryland facility of the plaintiff, Clean Earth of Maryland, Inc. ("Clean Earth"). On July 16, 2008, a tractor trailer owned and

1

operated by Independent Continental Carriers, Inc. ("Continental Carriers") and driven by Charles D. Bole ("Bole") wrecked while traveling on West Virginia Route 33 near Judy Gap. ([Doc. 13-3] at ¶ 19). During the wreck, diesel fuel from the tractor trailer and some of the batteries being transported spilled onto the ground. (Id. at ¶ 20). As a result, the soil at or near the site of the wreck was contaminated with both spilled battery acid and diesel fuel. (Id. at ¶ 21).

On behalf of Continental Carriers, Bole hired Miller Environmental, Inc. ("Miller Environmental") to undertake immediate remediation of the site, including the collection of the batteries and the collection and treatment of the contaminated soil. (Id. at ¶ 22). After collection and testing, Miller Environmental determined that some, if not all, of the contaminated soil was hazardous. (Id. at ¶¶ 23-25). Miller Environmental then labeled several of the containers of contaminated soil as hazardous wastes and disclosed the hazardous nature of the soil to Bole and Continental Carriers, among others. (Id. at ¶¶ 26-27).

Shortly thereafter, Emergency Response & Training Solutions ("ERTS") replaced Miller Environmental as the company to oversee the remediation of the Judy Gap site, including the collection, storage, transportation, and treatment of the contaminated soil. (Id. at ¶ 28). ERTS contracted with RKM Environclean, Inc. ("Environclean"), which performed the actual remediation. (Id. at ¶ 29). Together, ERTS and Environclean also determined that the contaminated soil was hazardous and informed Bole, Continental Carriers, and others of their determination. (Id. at ¶¶ 30-34). ERTS then contracted with Total Safety, Inc. ("Total Safety") for the transportation and treatment of the soil collected at the site. (Id. at ¶ 35).

On August 15, 2008, Total Safety requested permission to dispose of the soil collected from Judy Gap in Clean Earth's Maryland facility, which is authorized to accept only non-hazardous wastes. (Id. at ¶¶ 36, 17). On the same day, Total Safety provided Clean Earth a written certification titled "Non-Hazardous Profile Sheet," which represented that the wastes were not hazardous. (Id. at ¶ 37). On August 27, 2008, and August 28, 2008, the contaminated soil from the Judy Gap site was delivered to Clean Earth's facility for treatment. (Id. at ¶ 38). Relying upon Total Safety's certification, Clean Earth accepted and disposed of the soil in its facility. (Id.).

However, on September 18, 2008, the West Virginia Department of Environmental Protection (the "WVDEP") notified Clean Earth that the Judy Gap site soil was contaminated with hazardous wastes and could not be deposited in Clean Earth's facility. (Id. at ¶ 39). As a result, Clean Earth was required to remove all of the hazardous soil from its facility and transport the soil for treatment at a Clean Earth facility permitted to accept hazardous waste. (Id. at ¶ 40). On September 22, 2008, the WVDEP issued a separate Notice of Violation to Continental Carriers, ERTS, and Total Safety. (Id. at ¶¶ 41-43). Each notice alleged that those entities had caused or allowed five violations of the West Virginia regulations governing the generation, treatment, storage, transportation, and disposal of hazardous wastes. (Id.).

Over a year later, on October 8, 2009, a Final Award of Arbitration was entered granting Clean Earth "a total award of $571,835.58" against Total Safety. (Id. at ¶ 122). Thereafter, on April 6, 2010, the Final Award of Arbitration was entered as a Judgment in the Court of Common Pleas, Lawrence County, Ohio. (Id. at ¶ 124). At the time of the relevant circumstances in this case, Total Safety was the named insured on a commercial

liability policy issued by Westchester Surplus Lines Insurance Company ("Westchester").

## II. Procedural History

On August 25, 2010, Clean Earth filed suit against, *inter alia*, ERTS, Total Safety and two of its officers ("Total Safety"), and Westchester in the Circuit Court of Pendleton County, West Virginia [Doc. 13-1]. Clean Earth's First Amended Complaint ("FAC"), filed September 22, 2010, contains seven tort claims and a claim for a declaratory judgment of insurance coverage.

In Count I, Clean Earth alleges that the defendants are strictly liable for the damage it suffered as a result of the defendants' failure to comply with the laws of the State of West Virginia regulating the generation, handling, treatment, storage, transportation, and disposal of hazardous wastes. ([Doc. 13-3] at ¶¶ 69-73). Similarly, in Count II, Clean Earth alleges that the defendants were negligent in their generation, handling, treatment, storage, transportation, and disposal of hazardous wastes, and consequently, caused Clean Earth harm. (Id. at ¶¶ 74-77). Count III directs a negligence *per se* claim specifically against Continental Carriers, ERTS, and Total Safety for their violation of laws and regulations governing the generation, handling, storage, transportation, treatment, and disposal of hazardous wastes. (Id. at ¶¶ 78-81).

Next, in Count IV, Clean Earth alleges that it was defrauded by Total Safety's false and material representations that the wastes presented to Clean Earth for treatment at its facility were not hazardous. (Id. at ¶¶ 82-96). Count V alleges that Total Safety fraudulently concealed the hazardous nature of the contaminated soil it presented to Clean Earth for treatment, and Count VI alleges that Total Safety, at least, negligently represented the nature of those contaminated soil. (Id. at ¶¶ 97-114).

Similar to the first three counts, Count VII alleges that the defendants caused Clean Earth harm as a result of their negligence concerning the cleanup and treatment of the wastes that were delivered to Clean Earth for treatment, including claims of negligent training and hiring. (Id. at ¶¶ 115-120). In its final count, Count VIII, Clean Earth seeks a declaratory judgment that Total Safety's liability insurer, Westchester, is liable to satisfy either the arbitration award against Total Safety or any judgment entered in this action against Total Safety arising from Total Safety's negligence and negligent misrepresentation. (Id. at ¶¶ 121-170).

On October 28, 2010, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 1]. Specifically, the defendants state that removal became proper when Clean Earth's FAC removed Miller Environmental, the only previously-named defendant with West Virginia residency. (Id. at ¶ 14).

On March 7, 2011, ERTS filed the instant motion requesting that this Court enter an Order "applying the substantive law of Maryland to this case, including but not limited to issues of strict liability in tort, negligence, negligence *per se*, fraud, fraudulent concealment, negligent misrepresentation, joint and several liability and allocation of fault to settling and un-named tortfeasors." ([Doc. 38] at 1). In support of its motion, ERTS argues that "establish[ing] at the outset of this case that Maryland substantive law will be controlling [will allow] the parties [to] proceed efficiently [in the discovery process] with a clear understanding of the law of the case." ([Doc. 39] at 1-2). According to ERTS, the substantive law of Maryland governs this case pursuant to the doctrine of *lex loci delicti* because Clean Earth's alleged injury occurred in Maryland. (Id. at 2-3).

On March 17, 2011, Westchester responded in opposition to ERTS' motion [Doc. 40]. Westchester takes no position on whether Maryland substantive law should be applied to Clean Earth's tort claims because "[d]iscovery has just begun, and the choice of law with respect to the underlying tort claims will be a highly fact-intensified matter that should be determined at the appropriate time by the Court following completion of discovery." (Id. at 1). However, Westchester argues that Ohio law clearly applies to Clean Earth's declaratory judgment action because: (1) its insurance contract with Total Safety was formed in Ohio, (2) Ohio has more significant contacts than any other state, and (3) application of Ohio law would not violate the public policy of West Virginia. (Id. at 2-7).

On March 21, 2011, Clean Earth responded in opposition to ERTS' motion [Doc. 41]. Clean Earth first argues that any decision on the substantive law to be applied to its claims is premature because "the facts established in discovery . . . will govern any choice of law issues in this case." (Id. at ¶ 1). However, if the Court elects to decide the choice of law issue, Clean Earth argues that West Virginia law should apply to its tort claims and its declaratory judgment action. With regard to its tort claims, Clean Earth emphasizes that "the pollution and damages alleged in the [FAC] are the result of defendants' acts and omissions occurring within the State of **West Virginia** and violating **West Virginia** regulations governing the generation, treatment, storage, transportation, and disposal of hazardous wastes." (Id. at ¶ 7) (emphasis in original). As for its declaratory judgment action, Clean Earth objects to Westchester's suggestion that Ohio law should apply to the interpretation of the insurer's contract with Total Safety because the public policy of West Virginia requires application of West Virginia law. (Id. at ¶¶ 18-23).

On March 28, 2011, Westchester replied to Clean Earth's argument that West

Virginia law should apply to its insurance policy with Total Safety [Doc. 42]. Westchester argues that "Ohio law should control with respect to the policy issued to an Ohio insured, and a public policy exception does not allow West Virginia state law to control the insurance policy coverage issue where the alleged damages under the policy did not occur in [West Virginia]." (Id. at ¶ 8). Westchester further argues that "there is simply no need for additional discovery to make this determination" because Clean Earth alleges that the damages for which it seeks coverage occurred in Maryland, not West Virginia. (Id. at ¶ 6).

On March 30, 2011, ERTS filed a Reply [Doc. 43], reiterating and clarifying its previous arguments in support of its motion. First, ERTS reiterates that this Court should now determine that Maryland law applies to Clean Earth's tort claims because its only alleged injury arising from those torts occurred in Maryland. (Id. at 2-6). Second, ERTS clarifies that its motion only seeks application of Maryland law to Clean Earth's tort claims, not the declaratory judgment action. (Id. at 6). On that choice of law issue, ERTS has no position. (Id.).

Accordingly, the sole issue presented by the instant motion, if determined ripe, is whether Maryland or West Virginia law should apply to Clean Earth's tort claims.

## DISCUSSION

**I.  Applicable Standard**

"Pursuant to ***Erie R.R. Co. v. Tompkins***, 304 U.S. 64, 78 (1938), the applicable law in a diversity case such as this is determined by the substantive law of the state in which a district court sits. This includes the forum state's prevailing choice of law rules." ***Vitatoe v. Mylan Pharms., Inc.***, 696 F.Supp.2d 599, 604 (N.D. W.Va. 2010) (citing ***Klaxon Co. v. Stentor Elec. Mfg. Co.***, 313 U.S. 487, 496-97 (1941)). In tort cases, West Virginia

generally "adheres to the conflicts of law doctrine of *lex loci delicti*." **W.Va. ex rel. Chemtall, Inc. v. Madden**, 216 W.Va. 443, 450-51, 607 S.E.2d 772, 779-80 (2004) (quoting Syllabus Point 1, **Paul v. National Life**, 177 W.Va. 427, 352 S.E.2d 550 (1986)). "That is, the substantive rights between the parties are determined by the law of the place of injury." *Id.* at 780 (quoting **Vest v. St. Albans Psychiatric Hosp.**, 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989)). However, West Virginia will not apply "the substantive law of a foreign state when that law contravenes the public policy of this State." **Paul**, 352 S.E.2d at 556.

Importantly, a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery. *See* **Advokatbyra v. eSCRUB Sys.**, 2011 WL 677053, *2 (E.D. Va. Feb. 15, 2011) (finding that "the choice of law for tort . . . claims should be determined with the benefit of a more complete record pending discovery"); **Arroyo v. Milton Academy**, 2011 WL 65938, *3 (D. Vt. Jan. 10, 2011) (declining to conduct "choice-of-law analysis" because "it would be premature to resolve these questions before the completion of discovery"); **Graboff v. The Collern Firm**, 2010 WL 4456923, *8 (E.D. Pa. Nov. 8, 2010) ("[C]onducting a . . . choice of law analysis is fact-intensive and context specific. Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings.").

**II.     Analysis**

The main thrust of Clean Earth's allegations is that Total Safety delivered hazardous wastes from West Virginia to its Maryland facility for treatment and disposal, that Total

Safety misrepresented the hazardous nature of those wastes, and that Clean Earth was forced to remediate its facility. At this juncture, however, there are several factual issues surrounding Clean Earth's theories of liability against Total Safety and the other named defendants. As such, this Court finds it premature to determine the choice of law issues concerning Clean Earth's tort causes of action.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that ERTS' Motion for Application of Maryland Substantive Law **[Doc. 38]** should be, and hereby is, **DENIED** as premature.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: April 28, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE